**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | |
|---|---|
| In re:<br><br>SURI REALTY, LLC<br><br>Debtor and Debtor in Possession. | Chapter 11<br><br>Case No. 20-21270-JJT |

**OPPOSITION OF THE DENNIS ENGINEERING GROUP, LLC**
**TO DEBTOR'S MOTION TO DETERMINE THE VALUE OF THE SECURED CLAIMS**
**OF THE DENNIS ENGINEERING GROUP, LLC AND ELM ELECTRICAL, INC.**

The Dennis Engineering Group, LLC (the "Dennis Group"), a secured creditor in the above captioned Chapter 11 case hereby files this opposition (the "Opposition") to the *Motion to Determine the Value of the Secured Claims of the Dennis Engineering Group, LLC and Elm Electrical, Inc.* [Docket No. 40] (the "Motion"), filed by the debtor and debtor-in-possession, Suri Realty, LLC (the "Debtor") in the above captioned bankruptcy case (the "Case").[1]

**PRELIMINARY STATEMENT OF OPPOSITION**

Contrary to the Debtor's bald assertion, the Dennis Group has not admitted and does not admit that its secured claim is contractually subordinated to the claims held by People's United Bank ("PUB"). The Debtor erroneously presents this Motion as simply a dispute over valuation in an improper attempt to end run around applicable Bankruptcy Rules and the issues at the center of certain State Court litigation between the parties. As subsequently detailed herein, the Bankruptcy Rules require the commencement of an adversary proceeding when the priority of a lien is at issue. Given the parties' dispute over the priority of the Dennis Group's lien, the relief sought in the Motion cannot be granted by way of a motion brought pursuant to Bankruptcy Rule 3012 and,

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in the Motion.

therefore, must be denied.

The Debtor has admitted that it owes the Dennis Group no less than $13,254,772.95. See Debtor's response to Interrogatory No. 16 in connection with that certain pending State Court litigation (the "Debtor's Interrogatory Responses"), a true and correct copy of which is attached to the accompanying Declaration of Tom Dennis (the "Dennis Declaration") as Exhibit A. Further, at present the Dennis Group has no reason to dispute the Debtor's valuation of the Properties.[2] The central underlying dispute between the parties relates to whether the actions of the Debtor, PUB, and related parties invalidate the Subordination Agreement (as subsequently defined herein) and / or necessitate the equitable subordination of PUB's claim. Such disputes are not the appropriate subject of a motion brought pursuant to Section 506(b) of the Bankruptcy Code and, rather, must be determined only after the Dennis Group has had full opportunity to uncover all relevant facts by way of discovery as part of an appropriate adversary proceeding.

## LIMITED RELEVANT FACTS

1. On June 6, 2017, the Dennis Group entered into that certain Agreement for Engineering and Construction Management Services (the "Construction Contract") with the Debtor, pursuant to which the Dennis Group was to, generally, perform certain design, engineering, construction management services and construction work in connection with the design, engineering, construction, fixturing, equipping, developing and installation of an addition to the existing improvements on the Properties (the "Project"). The Project was undertaken for the benefit the Debtor's parent, Carla's Pasta, Inc.[3] ("Carla's" and, together with the Debtor,

---

[2] The Dennis Group reserves all rights to dispute the valuation of the Properties.

[3] On February 8, 2021, Carla's filed its own voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"); Carla's bankruptcy case (Case No. 2:21-bk-20111) is presently pending before the United States Bankruptcy Court for the District of Connecticut, Hartford Division.

individually and collectively, the "Debtor Parties"). The Project began pursuant to the contract and, therewith, Carla's began making payments owed to the Dennis Group on behalf of the Debtor Parties.

2. On or about October 2, 2017, the Debtor Parties informed the Dennis Group that they had a lender that was willing to extend financing for this project but that approval of such financing was expressly contingent on the Dennis Group's execution of a certain consent agreement (the "Consent Agreement"), a true and correct copy of which is attached to the Dennis Declaration as Exhibit A. Generally, pursuant to the Consent Agreement, the Dennis Group was asked to subordinate any and all mechanics' liens to which it may be or may become entitled, to the liens of the Debtor Parties' prospective lender. The Dennis Group understood that the loans obtained would be used to satisfy the ongoing obligations due to the Dennis Group under the Construction Contract and the John Lapinski of the Dennis Group executed the Consent Agreement and the Dennis Group continued to perform under the Construction Contract.[4]

3. Upon information and belief, the Debtor Parties were, more than likely, insolvent at the time of execution of the Consent Agreement, as evidenced by the execution of the first Forbearance Agreement between PUB and the Debtor Parties only a short time thereafter, on June 8, 2018. See Declaration of Sandeep Gupta, filed in support of the Debtor Parties Petition and First Day Pleadings in Case No. 21-20111, at p. 3, ¶ 8.

4. On or about October 2, 2017 and also on October 8, 2018, the Dennis Group was presented with certain "Subordination of Mechanics' Liens to Lien of Mortgage" (the "Subordination Instrument" October 8, 2018), a copy of which was included as Exhibit C to the

---

[4] The Dennis Group contests whether John Lapinski's execution of the Consent Agreement was effective to bind the company.

Motion. Believing that the Subordination Instruments that were signed were part-and-parcel of the Consent Agreement, John Lapinski a Dennis Group employee also executed the Subordination Instrument.[5]

5. By July 19, 2019, a letter from The Town of South Windsor was sent to the Dennis Group in connection with the Project that indicated that the structure had met all applicable Connecticut State Building Code requirements. Nevertheless, the Dennis Group's work on the global project continued and substantial construction and other construction management work continued on the Project for several months thereafter. Invoices generated by The Dennis Group and sent to the Debtor document work performed by it on this project that exceed a million dollars. This was billed to the Debtor by the Dennis Group for the period between August 14, 2019 through December 23, 2019; this amount includes amounts due to certain of the Dennis Group's subcontractors for work managed by the Dennis Group pursuant to the Construction Contract.[6]

6. On December 23, 2019, the Dennis Group caused a Certificate of Mechanic's Lien to be filed with the Town Clerk of South Windsor, Connecticut, thereby perfecting its lien on the Properties to secure obligations due under the Construction Contract; at the time of the recordation of the Dennis Group Mechanic's Lien, the Dennis Group was owed no less than $13,284,156.96 plus interest and attorney's fees.

7. On May 21, 2020, the Dennis Group commenced an action to foreclose on its mechanics' lien in the Connecticut Superior Court, District of Hartford, styled as *Dennis*

---

[5] The Dennis Group contests whether the Dennis Group's employee John Lapinski's execution of the Subordination Instrument was effective to bind the company.

[6] During this same period of time, the Dennis Group also performed and billed for approximately $3.5 million of additional work in relation to, what the parties commonly referred to as, the "Sauce Room." The Dennis Group expressly reserves all rights to assert this amount as an additional amount due and owing by the Debtor Parties and secured by its mechanics' lien.

*Engineering Group, LLC v Suri Realty, LLC et al.,* Case No. HHD-CV-20-6128121-S (the "Foreclosure Action"). The Foreclosure Action is presently stayed on account of the automatic stays in the Debtor Parties' bankruptcy cases.

8. On October 15, 2020, the Dennis Group amended its Contract Action filed against the Debtor Parties that was filed in Superior Court, District of Hartford, styled as *Dennis Engineering Group, LLC v Suri Realty, LLC et al.,* Case No. HHD-CV-20-6127365-S (the "Fraud Action" and, together with the Foreclosure Action, the "State Court Actions"), to cite in PUB as an additional party and assert claims against it arising from and related to the Construction Agreement and the Project against: (a) the Debtor Parties for breach of contract, unjust enrichment, fraudulent misrepresentation, and negligent misrepresentation; and, (b) PUB (the Debtor Parties' lender) for tortious interference with business relations, fraudulent misrepresentation, negligent misrepresentation, and breach of the covenant of good faith. A true and correct copy of the Revised Complaint filed in the Fraud Action was included as Exhibit D to the Motion. The Fraud Action is presently stayed on account of the automatic stays in the Debtor Parties' bankruptcy cases.

9. On October 29, 2020, an involuntary petition for relief under chapter 7 of the Bankruptcy Code was filed against the Debtor by, *inter alia*, the Dennis Group.

10. On December 17, 2020 (the "Conversion Date"), at the request of the Debtor, the Court entered the order for relief and converted this Case to a case under Chapter 11 of the Bankruptcy Code.

11. As of the Conversion Date, the Dennis Group was owed no less than $15,418,497.00 under the Construction Agreement, including principal and interest.

12. On January 13, 2021, the Debtor commenced its adversary proceeding in this case against the Dennis Group (Adv. Case No. 21-02002) (the "Adversary Proceeding") therein

seeking, generally, to discharge the Dennis Group's mechanics' lien.

## ARGUMENT

I. **DETERMINATION OF THE PRIORITY OF THE DENNIS GROUP'S LIEN IS NOT THE APPROPRIATE SUBJECT OF A § 506(B) MOTION: THE MOTION SHOULD BE DISMISSED, OR, IN THE ALTERNATIVE, CONSOLIDATED WITH THE PENDING ADVERSARY PROCEEDING.**

The Advisory Committee Notes to Bankruptcy Rule 3012 make clear that the "[m]echanism described in Fed. R. Bankr. P. 3012 can be used to extinguish [a] lien when [the] basis for its avoidance is valuation of collateral under 11 USCS § 506(a), but [the] mechanism described in Fed. R. Bankr. P. 7001 is required where [the] basis to extinguish [a] lien is [a] challenge to its validity, priority, or extent. . . ." U.S.C.S. Bankruptcy R. § 3012, Advisory Committee Notes; see also In re Clinton Nurseries, Inc., 608 B.R. 96, 105 (Bankr. Conn. 2019) ("FRBP 7001(2) . . . exempt[s] from its definition proceeding[s] under Rule 3012.. . . . The advisory committee notes make clear, however, that [a]n adversary proceeding is commenced when the validity, priority, or extent of a lien is at issue as prescribed by Rule 7001. That proceeding is relevant to the basis of the lien itself while FRBP 3012 is meant for valuation purposes.") (internal citations omitted); 10 Collier on Bankruptcy ¶ 7001.3 (16th ed. 2020) ("A proceeding to determine the priority of a lien necessitates an adversary proceeding.").

To be clear, a "proceeding under Rule 3012(a) does not commence an adversary proceeding. This is made clear by the 2017 amendment to Rule 7001(2), which now excludes from the definition of adversary proceeding 'a proceeding under Rule 3012.'" 9 Collier on Bankruptcy ¶ 3012.03 (16th ed. 2020). Unlike in Clinton, where this Court found that the "interests of efficiency and judicial economy" favored conversion of the contested matter to an adversary proceeding, the interests of efficiency and judicial economy in this case warrant dismissal of the Motion until the resolution of the Adversary Proceeding brought the by Debtor concurrently with

the Motion in its effort to extinguish the Dennis Group's lien. See Clinton, 608 B.R. at 105-106. In the alternative, the issues in this Motion should be consolidated with and resolved as part of the Adversary Proceeding to avoid duplicitous litigation and unwarranted expense.

Bankruptcy Rule 3012 provides this Court with discretion to decline making a ruling on the Motion if such ruling would be premature or unnecessary. 9 Collier on Bankruptcy ¶ 3012.02 (16th ed. 2020) ("The permissive language of the rule [3012(a)] allows the court to decline to make a ruling on value if the court determines the ruling to be unnecessary. . . . For example, if an adversary proceeding seeking avoidance of a lien is pending, valuing the lienholder's secured claim might be premature."). A motion brought pursuant to § 506(b) of the Bankruptcy Code is premature when the extent of a creditor's lien against property of the estate is undetermined, or when an adversary proceeding seeking to extinguish the lien is pending. Id. at ¶ 3012.03 ("The value that the court is charged with determining under section 506 and Rule 3012(a) is the value of the creditor's secured claim against property of the estate. To get to that point, the court must know (1) the extent of the estate's interest in the property and (2) the extent of the lien against that interest. Only then can the question of the value of the lien on the estate's interest be determined.").

The Debtor's Motion is procedurally improper and, at best, premature and should be denied in its entirety. In this instance, the Debtor is not asking this Court to value the Dennis Group's claim and there is no present need to assess the value of the collateral. As noted at the outset, the Debtor has admitted that it owes no less than $13.2 million to the Dennis Group and, at present, the Dennis Group does not dispute the valuation of the Properties presented by the Debtor. Rather, the Debtor attempts to circumvent appropriate procedure to effectively obtain an unwarranted order from this Court as to the priorities of competing liens. The Debtor's Motion must fail for this reason alone. Even if the procedural improprieties of the Motion were to be

ignored, any ruling on the Motion would be premature given the pendency of the Adversary Proceeding.

In the alternative, if this Court is inclined to exercise its power under § 105 of the Bankruptcy Code as it did in Clinton, the issues contained herein should be consolidated and resolved as part of the currently pending Adversary Proceeding. "Bankruptcy Rule 7042, through Civil Rule 42, provides for the consolidation of adversary proceedings involving common issues of law or fact." 10 Collier on Bankruptcy ¶ 7042.01 (16th 2020).

> Subdivision (a) of Rule 42 of the Federal Rules of Civil Procedure is made applicable in adversary proceedings and in contested matters by Rules 7042 and 9014. Subdivision (a) provides as follows:
>
> > (a) Consolidation. If actions before the court involve a common question of law or fact, the court may:
> >
> > (1) join for hearing or trial any or all matters at issue in the actions;
> >
> > (2) consolidate the actions; or
> >
> > (3) issue any other orders to avoid unnecessary cost or delay.
>
> Rule 42 is permissive, and under subdivision (a) the court has broad discretion to order consolidation and may do so on its own motion. The party moving for a joint hearing or trial has the burden of persuading the court that there exist common issues of fact or law which merit consolidation. . . .
>
> The purpose of consolidation is to ensure convenience and efficient conduct of litigation. An order for consolidation is not permitted unless common questions of law or fact exist in the actions pending before the bankruptcy court. Once common issues have been identified, the court must weigh the efficiency of consolidation against any expense, inconvenience or prejudice that may result from a joint trial. Courts may also consider whether separate trials of the actions in question could result in inconsistent adjudication of common factual and legal issues.

Id. at ¶ 7042.02.

The Adversary Proceeding and this Motion all originate from the parties' performance under and the circumstances surrounding the Construction Contract and related agreements, the Debtor Parties' efforts to obtain financing to pay for their obligations thereunder, and the promises and assurances made by the Debtor Parties and by PUB throughout the course of the parties' business relationships. As part of the Adversary Proceeding, the Dennis Group will shortly be asserting its own counter claims[7] grounded in substantially the same claims as those necessary to resolve this Motion and subsequently addressed, in brief, herein. See infra Part II. In order for this Court to rule on the value of the parties' secured claims, a determination as to the priorities of those claims must first be made, and in order for a determination of the priority of the claims to be made, a determination as to the validity of those claims and interests needs to be made. The interests of efficiency and judicial economy support consolidating the process for discovery of the relevant facts and the adjudication of the issues in appropriate order. For the foregoing reasons, absent dismissal of the Motion in its entirety, the Dennis Group respectfully requests that the Motion be consolidated and addressed within the confines of the Adversary Proceeding presently pending before this Court.

**II.     THE MECHANICS' LIEN SUBORDINATION IS UNENFORCEABLE, VOID AND SUBJECT TO RECESSION.**

**A. The Consent Agreement and the Subordination Instrument Must Be Construed Together.**

Connecticut law is clear that where "both agreements are part of a single transaction . . . [they] must be read together to show the intention of the parties." Inland Southeast New Britain, LLC v. Ogulturk, 2016 Conn. Super. LEXIS 3409, *3-4 (Conn. Super. Ct. 2016); see also, TVT

---

[7] The Bankruptcy Rules necessitate that the Dennis Group's claim for equitable subordination against PUB be brought by way of separate adversary proceeding; accordingly, such claim will not be included in the counter claims to the presently pending Adversary Proceeding.

Records v. Island Def Jam Music Group, 412 F.3d 82, 89-90 (2d Cir. 2005) ("TVT contends that the HOA and the SLA are separate because the evidence established that the parties intended that they would be read separately, they were negotiated and signed at different times, memorialized in different documents and involved different parties. While these factors are pertinent to the "separate contracts" determination, they do not address the legally operative question: whether the contracts were part of a single transaction intended to effectuate the same purpose.").

The Debtor's Motion is conspicuously lacking of any reference to the existence of the Consent Agreement; rather, the Debtor attempts to rely solely on the Subordination Instrument in its effort to have its cake and eat it too. See Motion at p. 5, ¶ 14. The purpose of both the Consent Agreement and the Subordination Instrument (collectively, the "Subordination Agreement") are clear; namely, to require the Dennis Group to subordinate its interests to those of PUB in order to facilitate the Debtor Parties' financing efforts. The fact that the Consent Agreement and the Subordination Instrument were signed on different dates is immaterial to the determination of whether they formed part of a single transaction. It is therefore imperative that both of the aforesaid documents and the circumstances surrounding their conceptions be considered in determining their enforceability and validity.

**B. By its Terms, the Subordination Agreement is Not Enforceable by the Debtor.**

The Consent Agreement provides that "[t]he rights of the Agent [PUB] hereunder are for the benefit of the Agent only, and its successors and assigns, and **Suri agrees that it has no rights, entitlement or standing to require or enforce any such limiting condition against Contractor**." Consent Agreement at p. 3, ¶ 8 (emphasis added). By the terms of the Subordination Agreement itself, the right to attempt to enforce the Subordination Agreement belongs solely to PUB. The Debtor lacks standing to bring this Motion and, accordingly, the Motion should be

denied in its entirety.

It is further worth noting that the Debtor's estate (the "Estate") shall obtain no benefit regardless of what determination is made as to the Dennis Group's and PUB's competing interests. If the Debtor's own valuation of the Properties is to be believed, there remains no equity in the Properties above and beyond the value of the Dennis Group's and PUB's secured claims, regardless of their order of priority. Any potential benefit that could conceivably be derived from the reordering of priorities in the fashion the Debtor has attempted would inure solely to the Debtor's parent (i.e., Carla's), as the express co-obligor of the indebtedness due to PUB. Therefore, in addition to the terms of the Subordination Agreement which mandate that the Debtor take no part in this fight, the equities of the Bankruptcy Code require that the Debtor refrain from further pursuing this Motion (and the related Adversary Proceeding); such efforts only serve to minimize the value of the Estate.

### C. The Subordination Agreement was Induced by Fraud and Is Therefore Invalid.

> [G]iven a lawful and valid subordination agreement, the bankruptcy court is without equitable power to realign the contractual priorities established by the parties in their contract.
>
> **This result is not mandated, however, where the subordination agreement is unlawful, e.g., induced by fraudulent misrepresentation, and therefore invalid.**
>
> "When a junior creditor establishes that the subordination agreement is unlawful, it may be reasonable and necessary, if equity is to be done, to require a senior creditor to prove that he relied on the subordination agreement, without actual or constructive knowledge of any infirmity in the agreement, in advancing funds to the bankrupt as a condition to receiving priority in the distribution of the bankrupt's estate."

In re Weis Secur., Inc., 1976 U.S. Dist. LEXIS 14105, *5 (Dist. S.D.N.Y. 1976) (quoting Matter of Credit Industrial Corporation, 366 F. 2d 402, 409 (2d Cir. 1996)) (emphasis added).

As noted at the outset, the circumstances surrounding the Subordination Agreement and its execution by the Dennis Group are the subject of the presently stayed Fraud Action pending before the Connecticut Superior Court. As part of the Fraud Action, the Dennis Group has asserted, *inter alia*, that it was fraudulently induced by the Debtor Parties and by PUB to execute the Subordination Agreement. In addition to the Fraud Action, the Dennis Group will be asserting counter claims against the Debtor Parties and against PUB premised on the same grounds as part of the Adversary Proceeding. If proven, the fraudulent inducement claims would give rise to the right to rescind the Subordination Agreement or, as appropriate, to the equitable subordination of PUB's claim.

Adjudication of the Dennis Group's fraud and related claims may only be accomplished by way of an adversary action and, of course, cannot be fully briefed or vetted as part of this Opposition to the Motion. Briefly, however, the Dennis Group contends that it was induced into executing the Subordination Agreement on account of repeated promises and assurances made by the Debtor Parties and by PUB that a portion of the loan proceeds would be used to satisfy the obligations owed to the Dennis Group. The Dennis Group further contends that the Debtor Parties and PUB knew that such promises and assurances were untrue at the time made. The Dennis Group's Controller would not have executed the Subordination Agreement absent such promises and assurances having been made.

The Consent Agreement itself provides that "Contractor [the Dennis Group] has agreed to execute and deliver this Consent **due to the financial benefit of a portion of the Loan Proceeds being intended to satisfy Suri's obligations to Contractor under the Contract**." Consent Agreement at p. 2, ¶ E (emphasis added). The Consent Agreement further provides that "Contractor acknowledges that it will obtain substantial benefit from the making of the Loan to

the Borrower **and that a portion of the Loan proceeds are intended to be used by Suri to satisfy Suri's obligations under the Contract**." Id. at p. 3, ¶ 8 (emphasis added). These assurances were also repeatedly made through further communications and correspondence between the parties throughout the course of the construction of the Project.

Pursuant to the Consent Agreement, PUB was obligated to provide the Dennis Group with "written notice . . . of an Event of Default [by the Debtor Parties] (as such term is defined in the Credit Agreement)." Id. at p. 3, ¶ 6. In exchange, the Dennis Group agreed that it "shall continue performance on the Agent's behalf under the Contract." Id. In order for the Dennis Group to continue to perform under the Construction Contract notwithstanding a breach by the Debtor Parties, PUB was required to "provide[] Contractor with its written agreement (1) to make all periodic payments and other payments which become due to the Contractor . . . in accordance with and subject to the terms of the Contract. . . ." Id. Not only did PUB fail to carry out its obligations under these provisions of the Consent Agreement, the Debtor has admitted that PUB directed it to not pay the Dennis Group. See Debtor's Interrogatory Responses, Interrogatory No. 19.

Of course, it is impossible for this Court to presently resolve these issues. The complexity of these issues and the need for further fact development simply highlights the impropriety of the Motion or, at best, its prematurity. Accordingly, the Dennis Group respectfully requests that the Court deny the Motion in its entirety.

### III. THE DEBTOR HAS FAILED TO SUBSTANTIATE THE ALLOWABILITY OF THE "SENIOR OBLIGATIONS" AS CLAIMS AGAINST THE ESTATE.

Lastly, it is worth noting that the Debtor claims, without substantiating, that "[a]s of the date [of the Motion], the aggregate outstanding principal balance of the loans under the Credit

Agreement is $37,041,927.14. . . .".[8] Motion at p. 4, ¶ 12.

> [J]ust as proofs of claim can be challenged by a party in interest, schedules can be challenged too, and if challenged . . . the schedules no longer have a presumption of validity. . . . And once the schedules are challenged, the Court must then consider issues relating to the existence, amount and priority of the underlying . . . liabilities on the merits. . . . [T]he party asserting the existence of a claim had the burden of establishing, by a preponderance of the evidence, that the claim was valid.

In re Adelphia Communs. Corp., 368 B.R. 140, 163 (Bankr. S.D.N.Y. 2007). Although the Debtor included copies of the Mortgage and Security Agreement, the Debtor has curiously failed to include a copy of the agreement that purports to create the underlying obligation that is secured by said Mortgage and Security Agreement, i.e., the Credit Agreement itself. Id. at pp. 4-5, ¶ 13. Notably, all of the Dennis Group's efforts to obtain a copy of the Credit Agreement – both by way of informal request and by way of formal discovery as part of the State Court Actions – have been stonewalled by motion practice and objections lodged by the Debtor Parties and by PUB. The Debtor has the burden of establishing the validity and amount of PUB's claim by a preponderance of the evidence; the Debtor has failed to do so.

Bankruptcy Rule 3001 is further instructive here.

> Bankruptcy Rule 3001 requires a claimant to attach supporting documentation to the claim. See Fed. R. Bankr. P. 3001(c). Rule 3001(c) states "when a claim, or an interest in property of the debtor securing the claim, is based on a writing, a copy of the writing shall be filed with the proof of claim. . . . If the claimant fails to comply with the Rule 3001 documentation requirements, the claimant is not entitled to *prima facie* validity of the claim.

In re Residential Capital, LLC, 2013 Bankr. LEXIS 4183, *11, 2013 WL 5524728 (Bankr. S.D.N.Y. 2013). A debtor that seeks to wholly strip a secured creditor of its security interest by

---

[8] The Dennis Group shall be initiating an adversary proceeding disputing, *inter alia*, the validity, amount, and purported priority of PUB's claim.

relying on a purportedly senior secured claim's gorging of all equity in the collateral must unquestionably be held to at least the same standard as a claimant that seeks allowance of its claim against a debtor's estate. Having failed to provide this Court with a copy of the Credit Agreement, the Senior Secured Lenders' claim is not entitled to *prima facie* validity.

## CONCLUSION

For the foregoing reasons, the Dennis Group respectfully requests that the Motion be denied in its entirety. In the alternative, the Dennis Group respectfully requests that this Motion be consolidated with the pending Adversary Proceeding.

Dated: February 16, 2021

                Richard S. Lauter, IL Bar No. 6182859
                  (Admitted Pro Hac Vice)
                Angeline Ioannou, CT Bar No. 413092
                LEWIS BRISBOIS BISGAARD & SMITH LLP
                185 Asylum Street, Suite 2603
                Hartford, Connecticut 06103
                860.748.4806

                *Attorneys for the Dennis Engineering Group, LLC*